# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:20-CR-164 |
| v. | § | Judge Mazzant |
| | § | |
| KENNETH BRANDON CHASTEEN | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion to Suppress (Dkt. #29). The Court, having considered the Motion, the briefing, and the applicable law, finds the Motion must be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case concerns the stop, questioning, and arrest of Defendant Kenneth Chasteen ("Chasteen"). On June 26, 2020, off-duty police officer David Bone observed a white Mercedes-Benz CLA 250 follow him through the gate of his apartment complex. Concerned for his safety, Officer Bone immediately exited the complex. The Mercedes continued to follow him onto the street before turning into a poker club next door. After a brief stop at the poker club, the Mercedes quickly accelerated out of the area. Officer Bone found this behavior threatening and potentially indicative of criminal activity, so he reported the events to the Carrollton Police Department. Officer Bone also reported a description of the driver.

Carrollton police officers quickly located the vehicle traveling at a high rate of speed on the Plano Parkway. When the vehicle stopped at a 7/11 gas station, officers set up a perimeter and checked the vehicle's license plate. During this check, officers also observed a gun in plain view in the center-console.

Shortly after officers arrived, a man matching the description of the suspect exited the 7/11.

Officers later identified the man as Chasteen.  Chasteen walked towards the Mercedes, the only car in the parking lot, with keys in his hand.  Officers then initiated contact with Chasteen.  Chasteen, through his body language and responses to questions, acknowledged the Mercedes and gun were his.  While speaking with Chasteen, officers noticed the odor of alcohol on his breath.  Chasteen said he had a license to carry, but after checking his driver's license, officers discovered this was false.  Officers also discovered that Chasteen had a prior felony offense for arson.

After learning of Chasteen's felony, officers detained Chasteen in the parking lot.  Officers ordered Chasteen to remain seated and asked him to stop texting.  When asked again about the car and gun, Chasteen changed his story and denied ownership.  Eventually, Officers pressed and Chasteen admitted possession of the gun "due the current environment."  After probing, Chasteen also admitted he could not possess the gun as a former felon lacking a license to carry.  Following confirmation of ownership of the Mercedes, Officers arrested Chasteen.

The following afternoon, Carrollton PD Detectives Michael Wall ("Detective Wall") and Brandon Bonner ("Detective Bonner") conducted a video-recorded, Mirandized interview with Chasteen at the Carrollton City Jail.  Chasteen voluntarily waived his *Miranda* rights and agreed to speak with the detectives.  Detective Wall and Bonner asked Chasteen about the arrest and Chasteen confessed that he was not supposed to have a gun.  The detectives never confronted Chasteen with any of the statements he made previously to the patrol officers the night before.

On July 8, 2020, a grand jury indicted Chasteen on one count of felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Dkt. #1).

On January 11, 2021, Chasteen moved to suppress statements made during his encounter with police, the gun, and the stationhouse confession (Dkt. #29.  On February 8, 2021, the Government responded (Dkt. #39).  On February 10, 2021, Chasteen filed a reply (Dkt. #41).  On

February 11, 2021, the Government filed a sur-reply (Dkt. #43).  On March 25, 2021, the Court

held a hearing on the Motion (Dkt. #47).

## LEGAL STANDARD

Incriminating statements made during a "custodial interrogation" are generally

inadmissible if the suspect did not receive a *Miranda* warning. *Missouri v. Seibert*, 542 U.S. 600,

608 (2004). In *Miranda*, the Supreme Court held that "the Fifth and Fourteenth Amendments'

prohibition against compelled self-incrimination require[s] that custodial interrogation be

preceded by advice to the putative defendant that he has the right to remain silent and also the right

to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981). *Miranda*

warnings are required when an individual is both "in custody" and "subjected to interrogation."

*Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

A person is in custody for *Miranda* purpose only if they are "placed under formal arrest"

or "a reasonable person in the suspect's position would have understood the situation to constitute

a restraint on freedom of movement of the degree which the law associates with formal arrest."

*United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988).  This is "an objective inquiry that

depends on the 'totality of the circumstances.'" *United States v. Ortiz*, 781 F.3d 221, 229 (5th Cir.

2015) (quoting *United States v. Wright*, 777 F.3d 769, 774–75 (5th Cir. 2015)) ("The subjective

views harbored by either the interrogating officers or the person being questioned are irrelevant.").

In determining whether custody exists, courts consider: (1) "the circumstances surrounding the

interrogation"; and (2) whether "a reasonable person [would] have felt he or she was at liberty to

terminate the interrogation and leave." *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012)

(quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011)).  The Fifth Circuit has identified the

following factors relevant to this inquiry:

(1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave.

*United States v. Romero–Medrano*, 207 F. Supp. 3d 708, 711–12 (S.D. Tex. 2016) (citing *Wright*, 777 F.3d at 775). No one factor is determinative. *Wright*, 777 F.3d at 775. The defendant has the burden of proving he or she was under arrest or in custody. *United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985) (citing *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984) (overruled on other grounds)).

Questioning is interrogatory if it reflects "a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300. Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301; *see also Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989) ("Interrogation is defined as words or actions that the police should know are reasonably likely to elicit an incriminating response from the suspect."). This inquiry is "focuse[d] primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.* at 301.

The proper remedy for a *Miranda* violation is to exclude the un-warned statement from trial. *United States v. Patane*, 542 U.S. 630, 642 (2004) (citing *Chavez v. Martinez*, 538 U.S. 760, 790 (2003)). However, physical evidence obtained as a result of un-*Mirandized* statements is still admissible. *See Id.*; *Oregon v. Elstad*, 470 U.S. 298 (1985).

**ANALYSIS**

Chasteen moves to suppress: (1) all statements made during his encounter with police; (2) the gun discovered in his car; and (3) his stationhouse confession. Chasteen argues the evidence should be suppressed because he was "in custody" the moment he exited the 7-11 and should have

received a *Miranda* warning before questioning.  Chasteen also argues the gun and stationhouse confession are fruit of the illegal interrogation.  The Government disagrees, arguing Chasteen was not "in custody" until the moment of his arrest.

The Court finds the Motion should be granted in part and denied in part.  First, Chasteen's initial statements should not be suppressed because he was not in custody until officers detained him on the curb.  Second, the gun should not be suppressed because the exclusionary rule does not apply to nontestimonial fruit of a *Miranda* violation.  Lastly, the stationhouse interrogation should not be suppressed because Chasteen waived his *Miranda* rights before talking to the detectives.

## I.      Statements During Chasteen's Detention and Questioning

The admissibility of Chasteen's inculpatory statements turns on whether Chasteen was "in custody" at the time of questioning.[1]  Chasteen argues all statements from his encounter should be suppressed because he was "in custody" as soon as he exited the 7-11.  The Government disagrees, arguing Chasteen was not in custody until formally arrested.

The Court finds Chasteen's initial stop and questioning valid, but his statements when detained on the curb inadmissible.  Chasteen only required a *Miranda* warning after officers confined him to the curb and pressed for a confession.

### i.      Initial Questioning While Standing Outside the 7-11

First, Chasteen argues his initial statements should be suppressed because he was "in custody" for *Miranda* purposes as soon as he exited the 7-11.  The Government argues a *Miranda* warning was not required because the initial questioning was only investigatory under *Terry*.

---

[1] The parties do not dispute that the questioning constituted "interrogation."  After checking his identification, officers repeatedly asked Chasteen to confess to illegally possessing the gun. *See Innis*, 446 U.S. at 301 ("[Interrogation] refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.").

The Court finds officers could legally stop, question, and ask Chasteen for his identification without a *Miranda* warning because they had reasonable suspicion he committed the offense of Driving While Intoxicated.  Under the Fourth Amendment, an officer who lacks probable cause may detain a person for investigative purposes if they suspect the person committed a crime. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 881, (1975).  This permits the detention of a driver if the officer has reasonable suspicion the driver committed a traffic violation. *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013).  During an investigative stop, officers may probe by "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015).  This investigation must only be "reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Andres*, 703 F.3d at 832.

Based on the totality of the circumstances, officers had reasonable suspicion that Chasteen committed the offense of Driving While Intoxicated.  Officer Bone observed Chasteen follow him into and out of his apartment complex before rapidly accelerating out of the area.  Officer Bone reported this to on-duty officers, who quickly located Chasteen and observed him driving at a high rate of speed.  Officers tracked Chasteen to a 7-11 and identified him by Officer Bone's description and the keys in his hand.  Immediately, officers smelled alcohol on Chasteen.  The observation of erratic driving and the smell of alcohol justified officers to questions to determine if Chasteen drove while intoxicated.  This is permissible under *Andres*, which allows officers to detain a suspect during an investigation without it constituting an arrest or custody. *See* 703 F.3d at 832.

The Fifth Circuit's five-factor test supports finding that Chasteen was not in custody when initially questioned. *Wright*, 777 F.3d at 775.  Officers only briefly questioned Chasteen while they checked his identification in the system.  Chasteen stood unrestrained in the middle of the parking

lot. Officers did not accuse Chasteen of any wrongdoing, rather sought to gather information about his erratic driving. Officer Corey Brewer only challenged Chasteen after Chasteen denied smelling of alcohol. Throughout the encounter, Chasteen held onto his keys and used his cell phone. Officers never threatened to arrest Chasteen. At this point, a reasonable person would assume the stop to be temporary, pending any identification check and sobriety test. Officers made this clear by letting Chasteen know they were only investigating a report about his driving. Each of the Fifth Circuit's factors supports a finding that Chasteen was not in custody during his initial questioning.[2]

As the initial stop and questioning of Chasteen did not rise to the level of "in custody," a *Miranda* warning was not required and Chasteen's statements should not be suppressed.

### ii.     Questioning While Sitting on the Curb

Second, Chasteen argues his statements while sitting on the curb should be suppressed because he was "in custody" after officers told him to "hang tight." Chasteen argues his restriction of movement, length of detention, and the accusatorial nature of the questioning required a *Miranda* warning. The Government argues this questioning only constituted a continuation of the investigatory stop.

The Court agrees with Chasteen. Chasteen entered custody when officers ordered him to sit on the curb and interrogated him about the gun. Any coerced statements made during this encounter must be suppressed. Under the Fifth Amendment, custody arises when a suspect is restrained to "the degree associated with formal arrest." *Bengivenga*, 845 F.2d at 596. Two inquiries are essential to this determination: (1) "the circumstances surrounding the interrogation";

---

[2] Chasteen's initial detention and questioning was legal even though officers asked questions unrelated to the Intoxicated investigation. Officers briefly asked about Chasteen's criminal history and the gun in his car, but these questions did not exceed the scope of the stop. Not only may officers ask unrelated questions while waiting for a computer check to process, but officers only asked about his criminal history and gun as part of their investigation into the driving investigation. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010), modified on other grounds, 622 F.3d 383 (5th Cir. 2010). Officers did not have reasonable suspicion to detain Chasteen for possession of the gun at this point, but the initial stop and questioning almost solely concerned his potential intoxicated driving.

and (2) "given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Cavazos*, 668 F.3d at 193 (quoting *J.D.B.*, 564 U.S. at 270).  This is an objective inquiry based on the totality of the circumstances. *Cavazos*, 668 F.3d at 193 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

When officers learned of Chasteen's felony status, they immediately ordered him to sit on the curb.  At this point, officers likely had probable cause to conduct an arrest.  However, this second phase of questioning lasted over twenty minutes as officers used security camera footage to confirm Chasteen's ownership of the car.  Officers surrounded Chasteen during the confrontation.  Officers ordered him to stay seated when he tried to stand up. *See Bengivenga*, 845 F.2d at 600 (finding that moving to a different location imposed a degree of restrain associated with formal arrest).  And though Chasteen remained in public, he was surrounded in an empty parking lot by five officers. *C.f. United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) (interview at a public restaurant did not render suspect to be "in custody").  Chasteen had possession of his cell phone at the beginning of the detention, but officers later confiscated it to answer a phone call he received.  Further, while much of the exchange was cordial, officers eventually became frustrated by Chasteen's inconsistencies and pressed him to confess to illegally possessing the gun.  This fact is significant: while surround by officers, sitting on the ground, officers listed Chasteen's criminal history and pressed him to confess to admit to wrongdoing.  Officers knew Chasteen was not allowed to possess a gun, yet questioned him anyway. *See Bengivenga*, 845 F.2d at 597 n.16 ("The awareness of the person being questioned by an officer that . . . the police already have ample cause to arrest him, may well lead him to conclude, as a reasonable person, that he is not free to leave, that he has been significantly deprived of his freedom.").

Based on the totality of the circumstances, the Court finds Chasteen entered custody when interrogated on the curb. As Chasteen was in custody and did not receive a *Miranda* warning, his statements to officers must be suppressed.[3]

## II.      Gun Discovered in the Mercedes

Next, the Court determines whether the gun discovered in Chasteen's car should be suppressed. Chasteen argues the gun is the fruit of the *Miranda* violation that occurred outside the 7-11. The Government argues there is no violation, and even if Chasteen's statements were coerced, the exclusionary rule does not apply to the nontestimonial fruit of a *Miranda* violation.

The Court finds the gun should not be suppressed because it is nontestimonial evidence. Even if officers illegally interrogated Chasteen, the Supreme Court and Fifth Circuit have explicitly held that the exclusionary rule does not apply to physical fruit of a *Miranda* violation. *See United States v. Lim*, 897 F.3d 673, 691 (2018) (quoting *Patane*, 542 U.S. at 645) (Kennedy, J., concurring) ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself."). Physical evidence may only be suppressed in the *Miranda* context if discovered as a result of a defendant's involuntary statements. *See United States v. Gonzalez-Garcia*, 708 F.3d 682, 687 (5th Cir. 2013).

While Chasteen argues that officers only knew about the gun because of his un-*Mirandized* interrogation, there is no evidence to suggest Chasteen's statements were involuntary. Voluntariness turns on whether a confession is obtained in a manner "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). Here, officers never lied to Chasteen or mislead him in any way, nor did officers intimidate him or make

---

[3] The Court notes that Chasteen's subsequent statements in the police cruiser on the way to jail should not be suppressed. While Chasteen had not received a *Miranda* warning at this time, Chasteen made these statements voluntarily. Exclusion under *Miranda* only applies to incriminating statements made in response to interrogatory questions.

threats of violence.  Based on the totality of the circumstances, Chasteen's responses did not rise to the level of involuntariness. *See Culombe v. Connecticut*, 367 U.S. 568, 602 (1961) ("If his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.").

The admissibility of Chasteen's prior statements does not change the reality that officers observed a gun in plain view, inside a car, which Chasteen owned, when he had a felony record, and lacked a license to possess.  Under the Fourth Amendment, these details permit entering the car and seizing the gun.  Officers learned of Chasteen's felony status and lack of a license to carry even without his incriminating statements.  Once officers checked his license and criminal history, they had probable cause to believe the gun was contraband.  Officers could use the automobile exception because Chasteen's criminal record gave rise to probable cause that the gun was contraband.  Or officers could use the search incident to arrest exception after formally placing Chasteen under arrest.

Chasteen argues that police would not have known his name and felony status if they gave him a *Miranda* warning in the first place, thus the gun should be suppressed.  But even if Chasteen's statements on the curb are suppressed, officers could legally check Chasteen's license and criminal history as soon as he left the 7-11.  "In custody" does not begin as soon as officers surround a citizen in public, especially when officers are conducting a valid investigatory stop based on reports of erratic driving and suspicion of intoxication. *Berkemer v. McCarthy*, 468 U.S. 420, 439 (1984) ("Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.).  Officers conducted a legal stop of Chasteen after the report of suspicious driving, immediately discovered the gun in his car, and acted accordingly by seizing it as evidence.

As the fruit of the poisonous tree doctrine does not apply to nontestimonial evidence in the *Miranda*-context, and officers had reasonable suspicion under *Terry* to initiate contact with Chasteen when he left the 7-11, the gun is admissible and should not be suppressed.

### III.     Interrogation at the Carrollton City Jail

Lastly, the Court considers whether Chasteen's interrogation at the Carrollton City Jail should be suppressed. Chasteen does not provide argument on this issue, but makes a blanket objection to fruit of the prior *Miranda* violation. The Government argues Chasteen's interrogation should not be suppressed because his subsequent *Miranda* warning cleansed any prior violation.

The Court finds the interrogation should not be suppressed because officers gave Chasteen a *Miranda* warning before beginning their questioning. After confirming he understood his rights, Chasteen executed a valid waiver. Following this waiver, any post-warning confession was lawful. This rule stems from the seminal Supreme Court cases *Missouri v. Seibert* and *Oregon v. Elstad*. The Fifth Circuit summarized the relationship between the two cases as follows: "*Seibert* requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, '[t]he admissibility of postwarning statements continue[s] to be governed by the principles of *Elstad*.'" *Courtney*, 463 F.3d at 338 (citing *Seibert*, 542 U.S. at 622) (modifications in original). The principles of *Elstad* instruct that a post-warning confession is admissible "even where the police had previously obtained a pre-warning confession, so long as the pre-warning confession was voluntary" *United States v. Nunez-Sanchez*, 478 F.3d 663, 668 (5th Cir. 2007).

First, the exception from *Siebert* does not apply because police did not employ a two-step strategy to obtain Chasteen's confession. Officers gave Chasteen his *Miranda* rights before interrogating him at the Carrollton City Jail. Chasteen freely waived his rights. Even if the

11

interrogation at the 7-11 was unlawful, the interrogation at the Carrollton City Jail was separate and not structured to leverage a prior confession. Detectives at the stationhouse were cordial, non-accusatory, and were not involved in Chasteen's arrest. Detectives also did not confront Chasteen with any of his prior statements. In fact, Chasteen was eager to share his side of the story.

Second, the exception from *Elstad* does not apply because Chasteen's pre-warning confession outside the 7-11 was voluntary. An interrogation may be unlawful without rising to the level of involuntary. *See Gonzalez-Garcia*, 708 F.3d at 687. A statement is voluntary if, "under the totality of the circumstances, the statement is 'the product of the accused's free and rational choice.'" *United States v. Reynolds*, 367 F.3d 294, 298 (5th Cir. 2004) (per curiam) (quoting *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998)). As previously discussed, officers did not threaten Chasteen to the point that he was forced to confess to his crime. *See United States v. Paden*, 908 F.2d 1229, 1235 (5th Cir. 1990) ("Encouraging a defendant to tell the truth, however, does not render a statement involuntary."). Because officers did not overcome Chasteen's free will, his statements were voluntary. *Culombe*, 367 U.S. at 602.

As officers gave Chasteen his *Miranda* rights before his interrogation at the Carrollton City Jail, and his prior statements leading to the arrest were voluntary, his confession is admissible and should not be suppressed.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Suppress (Dkt. #29) is hereby **GRANTED in part** and **DENIED in part**.
   **SIGNED this 13th day of April, 2021.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

12